Marshall E. Livingston, J.
This is a motion by Continental to permanently stay arbitration. Petitioner then cross-moved for an order compelling respondent Continental to arbitrate.
The hit-and-run accident out of which this claim arose occurred on September 21, 1975. Claimant was getting into a car owned and operated by John Giles when its left rear door was struck by the hit-and-run vehicle, and petitioner Spychalski was injured.
Mr. Giles was insured by Utica Mutual Insurance Company, and Mr. Spychalski was insured by respondent, Continental. Claims were made by Mr. Spychalski against both carriers under the respective uninsured automobile indorsements on their policies.
The chronology of events insofar as they are pertinent here appears to be as follows: On April 8, 1976, an acknowledged "Notice of Intention to make Claim” by the claimant was sent to Continental and received the following day. On April 30, 1976, Continental by letter stated that it would not honor the claim of Mr. Spychalski. On July 20, 1976, demand for arbitration was served upon respondent by certified mail, return receipt. The demand contained the language provided by CPLR 7503 (subd [c]), to wit: "please take further notice, that unless within twenty (20) days after service of this Notice of Intention to Arbitrate, you apply to stay the arbitration herein, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in Court the bar of a limitation of time.” On August 24, 1976 (34 days later) petitioner’s attorney received a notice of motion to stay arbitration from respondent by regular mail.
In the meantime Utica, the carrier of the Giles’ car, paid the petitioner its $10,000 limit under the uninsured automobile indorsement of its policy.
The primary thrust of Continental’s motion is that the petitioner can only collect $10,000 under the uninsured motorist’s indorsement, and having received $10,000 from Utica, whose policy covered the car which he was entering when injured by the hit-and-run car, he cannot duplicate that recovery from his own carrier.
*131 On the other hand, petitioner argues that this court has no jurisdiction to entertain Continental’s motion because CPLR 7503 (subd [c]) prescribes a Statute of Limitations in which to challenge a notice of intention to arbitrate. The exhibits presented show that Continental was derelict in this regard (Matter of Jonathan Logan, Inc. [Stillwater Worsted Mills], 31 AD2d 208, affd 24 NY2d 898; Matter of General Acc. Fire & Life Assur. Corp. [Cerretto] 60 Misc 2d 216).
Were I to leave the matter here and direct arbitration to go forward because technically Continental has no standing, in my judgment, I would be closing my eyes to the real point in this matter.
Although CPLR 2215 does not exactly fit these circumstances, nevertheless, the purpose of the provision is to minimize effort and delay (cf. 2A Weinstein-Korn-Miller, NY Civ Prac, par 2215.01).
Therefore, I grant respondent’s motion (despite its probable lack of standing) and deny petitioner’s cross motion. I have been unable to find any specific authority for or case in point on this subject.
If I dismiss Continental’s motion and direct arbitration, the very question concerning double compensation probably would arise on a later trial or an appeal from the arbitrators’ award. I deem this to be wholly unnecessary and accordingly decline, in my discretion, to dismiss Continental’s motion.
Actually in this case there are two carriers who are, so to speak, "in the ball park”. Each had policies to which Mr. Spychalski had recourse as an "injured person”. Utica paid off. Continental took the position "that the policy insuring the vehicle of John Giles extends primary coverage for this claim, and is in fact the exclusive remedy”.
Whether or not this is an accurate contention is not before me here. The question is whether or not Mr. Spychalski can collect another $10,000 under his own policy with Continental. I say he cannot.
The Insurance Law of the State of New York (§ 167, subd 2-a) limits the recovery of an "insured person” for an insurer under the uninsured motorist indorsement to a sum not to exceed $10,000 (see 30 NY Jur, Insurance, § 1244).
Mr. Spychalski was actually doubly insured in this situation. To carry it even further, if his wife and three children had each owned cars in the household which were insured *132 with four different carriers, then Mr. Spychalski, according to his claim here, should be entitled to a total of $60,000 for his "broken leg and related injuries”.
I hold that subdivision 2-a of section 167 of the Insurance Law precludes a recovery by an insured person under an "uninsured motorist” indorsement of more than $10,000, regardless of how many such indorsements on various policies may be available to him (cf. Matter of Neals v Allstate Ins. Co., 34 AD2d 265).